## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RUBIN BELL**                                      **CIVIL ACTION**

**VERSUS**                                          **NO.  05-5251**

**BURL CAIN**                                       **SECTION "D"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C),** and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.      Factual and Background

The petitioner, Rubin Bell ("Bell"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 9, 2000, Bell was indicted by a Grand Jury in St. James Parish for the

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

first degree murder of Keith Williams.[3]  The Indictment was later amended to charge Bell with second degree murder.[4]

The record reflects that, on April 6, 2000, Bell, along with three other individuals, Trevor Sanders ("Sanders"), Adrian Dunn ("Dunn"), and Mike Armour ("Armour"), drove to La Place, Louisiana, in Armour's car with the intent to rob a drug dealer there.[5]  However, the four men changed their plan and instead drove to Vacherie, Louisiana.  While there, they drove past a car wash, and Dunn spotted a red Cadillac that he wanted to steal.  They parked on a back street, at which time Bell and Dunn exited the car and walked to the car wash.  Both men wore masks and were armed with guns.  The two men approached Keith Williams ("Williams") and Henry Oubre ("Oubre"), who were washing Williams's red Cadillac.  Bell and Dunn aimed their guns at Williams and Oubre and forced them against the car wash wall.  One of the assailants hit Williams in the head with his gun, and then ordered both victims to get into the back seat of the Cadillac.  The assailants drove to an area near the Webre-Steib Plantation and ordered the victims to exit the car.  When Williams got out, he was shot in the head, and thereafter died.  Oubre tried to run, and he was shot in the shoulder.  Oubre managed to crawl to the roadway to summon help.

Shortly after the murder, the St. John the Baptist Parish Sheriff's Office contacted the authorities in St. James Parish because of distinct similarities between the Williams's murder and one that had occurred in La Place three days earlier.  The joint investigation of the two offices led to the arrest of Rubin Bell, Adrian Dunn, and the other participants in the robberies.  Search warrants

---

[3]St. Rec. Vol. 1 of 8, Indictment, 5/9/00; Minute Entry, 5/9/00.

[4]*Id.*, handwritten amendment dated 5/8/01; Minute Entry, 5/8/01.

[5]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Bell*, 840 So.2d 656, 658 (La. App. 5th Cir. 2003); St. Rec. Suppl. Vol. 9 of 11, 5th Cir. Opinion, 02-KA-1127, 2/25/03.

issued during the investigation led to the recovery of evidence of both crimes from the residences of Bell and Dunn.

Following Bell's arrest, he was interviewed by authorities from St. James and St. John the Baptist Parishes.  He confessed to officers in both Parishes.  In connection with the April 6, 2000, shootings of Williams and Oubre, Bell admitted to the officers that he was involved and claimed that Dunn was the shooter.

Bell was tried before a jury on November 6 and 7, 2001, and was unanimously found guilty as charged.[6]  At a hearing held on June 4, 2002, the Trial Court sentenced Bell to serve life imprisonment without benefit of parole, probation, or suspension of sentence.[7]

On appeal, Bell's counsel raised two errors: (1) the Trial Court erred in denying a mistrial when other crimes testimony was wrongly admitted; and (2) ineffective assistance of counsel at trial.[8]  On March 11, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed Bell's conviction.[9] The Court refused his request for rehearing on March 24, 2003.[10]

Bell did not seek further review in the Louisiana Supreme Court.  Therefore, his conviction became final on April 10, 2003, which was 30 days after issuance of the appellate court's opinion

---

[6]St. Rec. Vol. 1 of 8, Trial Minutes (3 pages), 11/6/01; Trial Minutes (2 pages), 11/7/01; St. Rec. Vol. 7 of 8, Trial Transcript, 11/6-7/01; St. Rec. Vol. 8 of 8, Trial Transcript (continued), 11/6-7/01; Verdict Transcript, 11/7/01.

[7]St. Rec. Vol. 1 of 8, Sentencing Minutes, 6/4/02; St. Rec. Vol. 7 of 8, Reasons for Sentence, 6/4/02.

[8]St. Rec. Vol. 8 of 8, Appeal Brief, 2002-KA-1127, 12/9/02; *State v. Bell*, 840 So.2d at 656; St. Rec. Suppl. Vol. 9 of 11, 5th Cir. Opinion, 02-KA-1127, 2/25/03.

[9]*State v. Bell*, 840 So.2d at 656; St. Rec. Suppl. Vol. 9 of 11, 5th Cir. Opinion, 02-KA-1127, 2/25/03.

[10]*Id.*; St. Rec. Suppl. Vol. 9 of 11, 5th Cir. Opinion, 02-KA-1127, p. 9, 2/25/03; St. Rec. Vol. 8 of 8, Application for Rehearing, 2002-KA-1127, 3/11/03.

and no further appellate review was available.[11]  *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the appeal process).

## II.   Procedural Background

On February 4, 2004, Bell filed a Uniform Application for Post Conviction Relief with the Trial Court raising two grounds for relief:[12] (1) the prosecutor elicited promises and commitments from the prospective jurors during voir dire; and (2) counsel gave ineffective assistance for failing to object to the prosecutor's voir dire questions.

The Trial Court appointed counsel to assist Bell.[13]  On July 6, 2004, Bell's appointed counsel filed a supplemental claim alleging that his confession was coerced and made under threat by the officers and was therefore inadmissable.[14]  The State responded to the original and supplemental claims arguing that they were without merit.[15]  At a hearing held on September 7, 2004, the Trial Court denied the Application without reasons.[16]

---

[11]La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be made within 30 days of the issuance of the judgment.  *See also* La. Code Crim. Proc. art. 922(A).

[12]St. Rec. Suppl. Vol. 11 of 11, Uniform Application for Post Conviction Relief, 2/4/04.

[13]St. Rec. Suppl. Vol. 11 of 11, Trial Court Order, 3/24/04.

[14]St. Rec. Suppl. Vol. 11 of 11, Supplemental Memorandum, 7/6/04.

[15]St. Rec. Suppl. Vol. 11 of 11, Answer to Petitioner's Application for Post Conviction Relief, 4/5/04; Memorandum in Opposition, 8/25/04.

[16]St. Rec. Suppl. Vol. 11 of 11, Transcript of Post Conviction Hearing, 9/7/04.

Bell filed a Writ Application with the Louisiana Fifth Circuit seeking review of this order and raising the three claims presented to the Trial Court.[17]  The Court denied the Application without reasons on October 12, 2004.[18]

Bell also timely filed two identical writ applications with the Louisiana Supreme Court on December 3 and 8, 2004, seeking review of the same three post conviction claims.[19]  The Court denied both applications by separate orders and without reasons on August 19, 2005.[20]

## III.    **Federal Petition**

On December 27, 2005, Bell filed a petition for federal habeas corpus relief raising three grounds for relief:[21] (1) the prosecutor elicited promises and commitments from the prospective jurors during voir dire in violation of due process; (2) counsel gave ineffective assistance for failing to object to the prosecutor's voir dire questions; and (3) the confession was coerced and made under threat by the officers and was therefore inadmissible.

The State filed an answer in opposition to Bell's petition alleging that Bell failed to exhaust state court remedies with regard to his challenge to the constitutionality of his confession and the petition should be dismissed for that reason.[22]  The State alternatively argued that Bell's three claims

---

[17]St. Rec. Suppl. Vol. 1 of 11, 5th Cir. Writ Application, 04-KH-1205, 10/7/04 (postmarked 10/5/04).

[18]St. Rec. Suppl. Vol. 1 of 11, 5th Cir. Order, 04-KH-1205, 10/7/04.

[19]Both applications were submitted or mailed within the 30 day period allowed for in La. S.Ct. R. X§5.  St. Rec. Suppl. Vol. 1 of 11, La. S. Ct. Writ Application, 04-KH-2951, 12/3/04 (postmarked 11/4/04); La. S. Ct. Writ Application, 04-KH-2985, 12/8/04 (signed 11/3/04).

[20]*State ex rel. Bell v. State*, 908 So.2d 661 (La. 2005); St. Rec. Suppl. Vol. 1 of 11, La. S. Ct. Order, 2004-KH-2951, 8/19/05; *State ex rel. Bell v. State*, 908 So.2d 650 (La. 2005); St. Rec. Suppl. Vol. 1 of 11, La. S. Ct. Order, 2004-KH-2985, 8/19/05.

[21]Rec. Doc. No. 3.

[22]Rec. Doc. No. 5.

are without merit and fail to state a cognizable federal claim.  Bell filed a reply to the State's

opposition arguing that he has exhausted his state court remedies and that his claims have merit.[23]

## IV.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[24] applies to Bell's petition, which is deemed filed in this court under the federal

"mailbox rule" on October 3, 2005.[25]  The threshold questions in habeas review under the amended

statute are whether the petition is timely and whether the claim raised by the petitioner was

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th

Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State suggests that Bell has not exhausted available state court remedies with respect to

his third claim, challenging the constitutionality of his confession.  The State relies on the mistaken

resolve that Bell did not raise the claim on post conviction review in the Trial Court before

proceeding to the higher state courts.  The record clearly reflects that Bell's appointed post

---

[23]Rec. Doc. No. 6.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Bell's federal habeas petition on December 27, 2005.  Bell dated his signature on the petition on October 3, 2005.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

conviction counsel raised the challenge to the constitutionality of the confession based on coercion and fear.  Bell has fully exhausted his state court remedies.  The State's exhaustion defense is therefore meritless.

The record does not reflect that the state courts relied upon a procedural bar when denying the claims and there is no basis to consider the application of one.  *See Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).  The Court also finds that Bell's petition is timely filed.  The Court therefore will consider the merits of Bell's claims.

## V.     Standards of Review on the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.  A state court's determinations of questions of fact are presumed correct and the court must defer to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  A state court's

decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision involves an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly." *Price v. Vincent*, 538 U.S. 634, 641 (2003) (*quoting Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

VI.     **Improper Questions by Prosecutor During Voir Dire**

Bell alleges that the prosecutor inappropriately sought promises and commitments from the prospective jurors during voir dire.  He argues that the prosecutor posed hypothetical questions to the jurors which required them to commit to a verdict of guilty if he proved his case.  Bell alleges that this violated the purposes of voir dire under Louisiana law and due process.  Relying solely on state law, the State argues that the claim is without merit because the prosecutor emphasized the requirement that he first prove his case.

Bell raised this claim in his application for post conviction relief and relief was denied by the state courts without supporting reasons.

To the extent Bell suggests that the prosecutor's questions to the voir dire panel were contrary to state law, his claim is not cognizable on  federal habeas review.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).  This court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986).  Thus, the court can only consider Bell's arguments in the context of federal constitutional law.

As a general matter, due process requires that state court proceedings be fundamentally fair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941).  A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial.  *Id*.; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas

review is proper only to determine whether a state trial judge's error is so extreme as to render the proceedings fundamentally unfair or violate an explicit constitutional right.)

However, improper jury argument by the State does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).   Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987).  The prosecutor's remark must be evaluated in the context of the entire trial.  *Greer v. Miller*, 483 U.S. 756, 765-66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).  Thus, to obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."  *Jones*, 864 F.2d at 356; *Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

In the context of voir dire, the law leaves the scope and the conduct of voir dire to the sound discretion of the trial court.  *Turner v. Murray*, 476 U.S. 28, 38 n. 12 (1986). Only under extraordinary circumstances does the scope of voir dire have constitutional implications. *Rosales-Lopez v. U.S.*, 451 U.S. 182, 188-190 (1981).

In this case, Bell takes exception to the prosecutor's efforts to determine if the panel members would be able to find guilt upon proper evidence knowing that Bell was facing a life

sentence.  Bell references in his petition only part of the following exchange during the jury

selection:[26]

> Q. . . . Now, Ms. Blank, knowing - - if I prove my case and I prove it beyond a reasonable doubt, then you know he goes to jail for life?
> A. Uh-huh. (Affirmative response)
> Q. All right.  And he's like, I don't know, nineteen years old and he's going away for life?
> A. Yes.
> Q. All right.  Mr. Joseph, could you do the same thing?  I need to know because like I said, there's no right answer and no wrong answer.  You can't be wrong.
> A. I feel that if you prove your case .
>       MR. GAUTREAU: I'm sorry.  I can't hear you.
>       COURT REPORTER:  Repeat your answer for Mr. Gautreau.
> A. I would if he would had proved his case.

Bell also references another part of the transcript from which he takes out of context a

specific exchange with one potential juror who indicated that she had one cousin who was murdered

and one cousin who was serving a life sentence in the Louisiana State Penitentiary for murder:[27]

> Q. Okay.  Do you understand that there's a life sentence if he's found guilty.
> A. Yes, I do.
> Q. Do you have a problem with the harshness of the sentence?
> A. No, sir.  I'd like to explain you something.
> Q. Okay.
>       . . .
> A. I have a cousin that was murdered and I have another cousin that's serving life in Angola Prison.
> Q. For murder?
> A. Yes.
> Q. Okay.  Do you think that would create a problem for one side or the other cause you had that in your past?
> A. Both of you would have to prove your case to - -
> Q. Well, keep in mind he doesn't have to prove anything.  He doesn't have to prove his innocence.  I've got to prove his guilt,  And I accept that burden of

---

[26]St. Rec. Vol. 8 of 8, Trial Transcript (continued), p. 179, 11/6-7/01.

[27]*Id*., pp. 180-81.

> proof.  But if I did, are you going to think about [sic] cousin that's in Angola?

A.   No, sir.

Q.   That's my question.  I mean, I might come in and prove a slam dunk case, and you say, oh, man because of my cousin, I can't see this kid going to Angola.  You understand what I'm talking about?

A.   Yes.

Q.   Would you be able to do it if I proved my case?

A.   Yes, sir.

In this case, contrary to Bell's suggestion, the prosecutor's questions were clearly directed at the jurors impartiality and their ability to follow the law.  Each question was prefaced with the understanding that the prosecution had to meet the burden of proof beyond a reasonable doubt.  The prosecutors interest at this point was to assure that the jurors harbored no prejudice or sentiment for Bell that would keep them from finding him guilty, upon proof beyond a reasonable doubt, simply because he was a young man facing a life sentence.  The prosecutor did not solicit commitments or promises as to innocence or guilt, nor did he mislead the jury regarding the law or the burden of proof.  *See Bowers v. Dretke*, 2005 WL 2045566 (S.D. Tex. Aug. 25, 2005).  Bell has failed to establish improper questioning occurred that violated his due process rights.

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, federal law.  Bell is not entitled to relief on this claim.

**VII.   <u>Ineffective Assistance of Counsel</u>**

Bell alleges that his counsel gave ineffective assistance because he failed to object to prosecutor's improper questions during voir dire.  The State argues that Bell has failed to establish that counsel acted deficiently or that his failure to object prejudiced the outcome of the proceedings.

Bell raised this claim in his Uniform Application for Post Conviction Relief.  The state courts' denied relief without stated reasons.

The standard for evaluating counsel's performance is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *Id.* 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, the petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  An analysis of counsel's performance must account for the reasonableness of counsel's actions in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).  Furthermore, "[t]o meet

13

the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id.*, In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state court's failure to grant relief was contrary to, or an unreasonable application of, *Strickland*.

This Court has already thoroughly reviewed the entirety of the voir dire transcript, including those portions specifically referenced in this report and in Bell's petition. The record does not demonstrate that the prosecutor asked inappropriate questions to the voir dire panel in violation of Bell's due process rights. Counsel was under no obligation to make an unfounded objection. His failure to do so was neither deficient nor prejudicial. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

Bell has failed to demonstrate that counsel was ineffective under the standards set forth in *Strickland*. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Bell is not entitled to relief on this claim.

## VIII.  **Coerced Confession**

In his final claim, Bell alleges that the police used intimidation, inducements, and promises to obtain his confession. As a result, he argues that he was denied due process of law when it was used at trial. The State argues that he failed to establish that his confession was not freely and voluntarily given.

Bell raised this claim in his state application for post conviction review. The state courts denied relief without stated reasons.

The admissibility of a confession is a mixed question of law and fact which warrants independent consideration by a federal court in a habeas proceeding. *Miller v. Fenton*, 474 U.S.

104, 112 (1985). However, any state court factual findings are conclusive if fairly supported in the record. *Id*. at 117. A federal court on habeas corpus review must also respect credibility determinations made by the trier of fact. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir.), *cert. denied*, 114 S.Ct. 637 (1993), (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).

Thus, a federal court entertaining a collateral challenge to the voluntariness of a confession is obliged to afford a presumption of correctness to state court findings of fact if fairly supported in the record, but is authorized to exercise de novo review over the ultimate conclusion of whether, under the totality of the circumstances, the confession was "voluntary." *Carter v. Johnson*, 131 F.3d 452, 461-62 (5th Cir. 1997). The determination of the voluntariness of a confession requires the court to consider the "totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).

There are two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002). First, the waiver of the right must be voluntary in that it was not the product of intimidation, coercion, or deception. *Moran*, 475 U.S. at 421. Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. *Carter*, 131 F.3d at 462 (citing *Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986)). Second, the relinquishment must be made with a full awareness of the nature of the right being waived. *Id*.

Although mental state or condition may be a significant factor in the voluntariness determination, "this fact does not justify a conclusion that a defendant's mental condition, by itself

16

and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Carter*, 131 F.3d at 462 (citing *Connelly*, 479 U.S. at 164).  Even if the confession is deemed involuntary under these standards, the Supreme Court has held that the admission of an involuntary confession is a trial error subject to a harmless error analysis.  *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

Under this analysis, to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Therefore, even if this Court were to find that Bell's Fifth Amendment rights were violated, the Court would have to also consider whether the admission of the confession was harmless in determining the verdict.  *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003).

In Bell's case, on November 15, 2000, his counsel filed a motion to suppress the confession.[28]  As required by *Jackson v. Denno*, 378 U.S. 368 (1964),  the Trial Court held an evidentiary hearing on July 3, 2001.[29]  At the hearing, Bell's counsel argued that he gave statements as the result of promises made by the officers and that the tape recordings contained impermissible evidence of other crimes.[30]  He argued that hours passed between the time Bell was brought to the officers and the actual taping of the statements, suggesting that coercion and promises were made during this extended time.[31]

---

[28]St. Rec. Vol. 4 of 8, Motion to Suppress Evidence, Statements, and Confessions, 11/15/00.

[29]St. Rec. Vol. 1 of 8, Minute Entry, 7/3/01; St. Rec. Vol. 7 of 8, Motion Hearing Transcript, 7/3/01.

[30]St. Rec. Vol. 7 of 8, Motion Hearing Transcript, pp. 28-29, 7/3/01.

[31]*Id*.

Bell testified at the hearing that he was interviewed by three officers, who told him that they were after Adrian Dunn and that he would receive a short sentence if he cooperated.[32]  He indicated on cross-examination that this promise was made to him three days before he gave his first statement.[33]  Bell testified, however, that he heard Dunn give his statement, in which he identified Bell as the shooter in both the St. James Parish and St. John the Baptist Parish murders.[34]  Bell stated that this was what prompted him to give his statement and identify Dunn as the shooter.[35]

The Trial Court also heard the testimony of Detective Henry Vicknair.[36]  He testified that Bell was read his rights prior to the taking of his statements.  He stated that Bell gave one statement in which he spoke about both the St. James Parish shooting and the St. John the Baptist Parish shooting.[37]  Vicknair testified that Bell was advised of his rights again and separate statements were recorded with respect to the separate crimes.  The officer testified that Bell was read his rights several times and signed waiver forms.[38]  He also indicated that Bell never asked to speak to an attorney.[39]  Vicknair also testified that Bell was never promised, coerced, or threatened Bell or

---

[32]*Id.*, p. 24.

[33]*Id.*, pp. 26-27.

[34]*Id.*, pp. 27-28.

[35]*Id.*, p. 28.

[36]*Id.*, p. 7.

[37]*Id.*, pp. 7-9.

[38]*Id.*, pp. 7-9, 12.

[39]*Id.*, pp. 9, 12

denied him of a break, sleep, food, or anything of that nature during the investigation and taking of the statements.[40]

After hearing the testimony of Vicknair and Bell, the Trial Court denied the motion.[41]  The Trial Court concluded that there was no indication of coercion before or during the taking of the testimony:[42]

> Well, in reference to time, we do have the indication of the time that transpired, but I did not hear any testimony about what might have gone on between 7:00 and 12:00 from any source.

Bell did not seek review of the denial of this motion and did not raise it again until he filed his application for post conviction relief.  As noted above, post conviction relief was denied by the state trial and appellate courts without any reasoning.

The ruling of the Trial Court on the motion to suppress reflects that the court found credible the testimony that no promises were made and nothing coercive or threatening was done in the taking of Bell's statements.  The determination of whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are entitled to deference when supported by the record as it is in this case.  *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992); *see also Miller*, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness).

---

[40]*Id.*, pp. 9, 12, 15, 16, 17.

[41]*Id.*, p. 30-31.

[42]*Id.*, p. 30.

In the evidentiary hearing, summarized above, the Trial Court received testimony from Vicknair that would indicate that no promises were made to Bell and no one discussed the length of time he would spend in jail.  The record also indicated that Bell was timely advised of his *Miranda* rights, he waived those rights, and freely gave his statement to the officers after hearing Dunn finger him as the trigger man.  This, he admitted, prompted him to make his statement identifying Dunn as the shooter.  Thus, the finding by the state court that the confession was not made because of coercion, promises, or threats is supported by the record and enjoys the presumption of correctness.

To overcome the presumption of correctness, Bell must rebut these factual findings by clear and convincing evidence, which he has not done.  In his federal habeas petition, Bell offers nothing more than the same conclusory allegations of coercion and promise already examined by the state trial court.  These allegations, however, were unsupported by the evidence presented at the motion hearing.  The state courts' factual determinations are adequately supported by the record.  Therefore, this Court on habeas corpus review must accept as conclusive the state courts' factual determination that the challenged statements or confessions were voluntary and were not the product of coercion or promise or threat.  Having found the statements to be knowingly and voluntarily made, the harmless error analysis is not necessary.

Accordingly, the state courts' denial of relief on this issue is not contrary to, or an unreasonable application of, Supreme Court precedent.  Bell is not entitled to relief on this claim.

## IX.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Rubin Bell's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____25th____ day of _____September_____, 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

21